1 | COOLEY LLP
2 | WHITTY SOMVICHIAN (194463)
   | (wsomvichian@cooley.com)
3 | 101 California Street, 5th Floor
   | San Francisco, CA 94111-5800
   | Telephone: (415) 693-2000
4 | Facsimile: (415) 693-2222

5 | COOLEY LLP
6 | BRENDAN J. HUGHES (*pro hac vice* to be filed)
   | (bhughes@cooley.com)
   | REBECCA GIVNER-FORBES (*pro hac vice* to be filed)
7 | (rgf@cooley.com)
   | 1299 Pennsylvania Avenue, NW, Ste. 700
8 | Washington, DC 20004
   | Telephone: (202) 842 7800
9 | Facsimile: (202) 842 7899

10 | Attorneys for Plaintiff
    | Google LLC

11

12

13 | UNITED STATES DISTRICT COURT

14 | NORTHERN DISTRICT OF CALIFORNIA

15

16

17 | GOOGLE LLC, a Delaware limited liability company, | Case No.

18 | | **COMPLAINT FOR:**

19 | Plaintiff, | **(1) FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114;**

20 | v. |

21 | KYDIA INC. D/B/A BEYONDMENU, an Illinois corporation, and DOES 1-20; | **(2) UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125; AND**

22 | Defendants. |

23 | | **(3) BREACH OF CONTRACT**

24 | | **DEMAND FOR JURY TRIAL**

25

26

27

28

**NATURE OF THE CASE**

This action involves the wrongful conduct of Defendant Kydia Inc. d/b/a BeyondMenu ("Defendant") in seizing control of Google listings of small business owners by making false and misleading representations about Defendant's identity and its supposed affiliation with Plaintiff Google LLC ("Plaintiff" or "Google") in violation of federal and state law.  Google brings this action to put an end to Defendant's wrongful conduct and the ongoing harm Defendant is causing to Google and the small business owners targeted in Defendant's scheme.

**PARTIES**

1.      Plaintiff is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California, 94043.

2.      Defendant is a corporation organized under the laws of the State of Illinois with its principal place of business at 10400 W Higgins Rd, Suite #205, Rosemont, Illinois, 60018.

3.      Google does not know the true names and capacities of those defendants sued as DOES 1-20 (the "Doe Defendants") and therefore sues them under fictitious names.  On information and belief, the Doe Defendants have participated in the scheme at issue in this Complaint, including by directing, aiding, and/or assisting the named Defendant in connection with the wrongful acts alleged herein.  Google is unable to identify all such Doe Defendants by name because Defendant has obscured the identity of the specific individuals and entities that have directed or otherwise participated in the scheme.  Google will amend this Complaint to allege the true names and capacities of these Doe Defendants when they are ascertained.

**JURISDICTION AND VENUE**

4.      This action arises under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act") and California breach of contract law.

5.      This Court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367.

6.      This Court has personal jurisdiction over Defendant because:  (i) Defendant consented to the jurisdiction of the federal or state courts of Santa Clara County, California, by agreeing to

Google's Terms of Service and the choice of venue provision therein; (ii) Defendant purposely transacts business in California and this District and has caused its services to be advertised, promoted, and offered under the GOOGLE trademark in California and this District; (iii) the causes of action asserted in this Complaint arise in part out of Defendant's contacts with California and this District; and (iv) Defendant has caused injury to Google and other individuals and entities in California and this District.

7.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including (i) Defendant's purposeful transaction of business in this District; (ii) its use of the GOOGLE trademark in advertising, promotions, and offers in this District; and (iii) the harm that Defendant caused to Google and other individuals and entities in this District.  In addition, Defendant consented to venue in this District by agreeing to Google's Terms of Service and the choice of venue provision therein.

## INTRA-DISTRICT ASSIGNMENT

8.     Assignment to the San Jose Division would be appropriate given the choice of venue provision in Google's Terms of Service, to which Defendant agreed to be bound.

## FACTUAL BACKGROUND

## GOOGLE AND THE GOOGLE TRADEMARK

9.     Google is a well-known provider of search engine, advertising, web application, and social networking services.  Since its inception, Google has devoted substantial time, effort, and resources to the development and extensive promotion of its goods and services under the GOOGLE trademark.  As a result, the GOOGLE mark has acquired significant recognition in the marketplace and has come to embody the substantial and valuable goodwill of Google.  To protect the GOOGLE mark for its exclusive use and as notice to the public of its claim of ownership therein, Google owns numerous trademark registrations for the GOOGLE mark and variations thereof, including but not limited to: U.S. Registration Nos. 2,806,075; 2,884,502; 4,058,966; 4,120,012; 4,123,471; 4,168,118; 4,202,570; 4,217,894; 4,525,914; 5,324,609; and 5,324,610.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

COMPLAINT

## GOOGLE LISTINGS AND GOOGLE MY BUSINESS

**10.**     When users run searches on Google's Search, Maps, or Google+ services, the search results can include business listings that correspond to the search.  These Google listings display certain information about a business, including the business's street address, hours, a link to the business's website, etc.  For several years, Google has offered free services for businesses to manage their listings that appear in Google search results.  Google currently offers these services as part of the Google My Business ("GMB") platform.  Among other features, GMB allows a business to access and edit the information that appears in its Google listing, such as updating business hours or street address, adding photos, or—for a restaurant—including links to menu and online ordering information.

**11.**     To use these free tools, a business creates a GMB account and then either creates a new Google listing for its business or claims an existing listing that has already been generated by Google.  To gain control of a Google listing, a person must verify that he or she is the owner or other authorized representative of the business.  Following this verification process, the person becomes the account "owner" and may edit that business's listings, grant access to the account to other users, and use various other GMB tools and features.

## DEFENDANT'S BUSINESS AND USE OF THE GOOGLE MARK

**12.**     Defendant purports to operate a mobile and online service for food delivery and takeout called "BeyondMenu."  Defendant compiles restaurant menus and posts them on its BeyondMenu-branded mobile app and website.  Defendant also integrates its service with online menus displayed on certain restaurants' websites.  Customers access these menus either through the BeyondMenu app or website, or directly from the restaurant's website through the BeyondMenu integration.  Customers can then place and pay for food orders through these online menus, and BeyondMenu purports to convey these orders and payments to restaurants.  The BeyondMenu website indicates that this service is available in various metropolitan areas throughout the United States, including locations throughout California.

**13.**     Google is informed and believes, and based thereon alleges, that Defendant generates revenue by, among other things, charging fees or commissions for orders placed through the

BeyondMenu service.

14. Google is informed and believes, and based thereon alleges, that Defendant also offers various online marketing services to restaurants, including but not limited to purporting to manage, improve, or optimize a restaurant's Google listings.

15. Google is informed and believes, and based thereon alleges, that Defendant has devised a scheme to obtain more orders, and thus more revenue, by seizing control of restaurants' GMB accounts and editing their listings to channel online and mobile orders through the BeyondMenu service.

16. Google is informed and believes, and based thereon alleges, that Defendant, by telephone and email, convinces restaurants through false or misleading representations (as described further below) to disclose information that allows Defendant to take control of the restaurants' GMB accounts, and therefore the contents of their Google listings. For restaurants that do not yet have a GMB account, Defendant uses the collected information to create accounts and pass Google's verification process. If a restaurant already has a GMB account, Defendant convinces a restaurant owner or employee to disclose a Google-assigned PIN that allows Defendant to take over the restaurant's GMB account.

17. Google is informed and believes, and based thereon alleges, that once Defendant obtains control of a GMB account, it edits the restaurant's business listings to direct online orders to BeyondMenu. Specifically, Defendant creates a simple website for the restaurant with an online menu that is integrated with the BeyondMenu service. These websites appear to be auto-generated and nearly identical to one another. Defendant then revises the restaurant's Google listing so that it identifies and links to this auto-generated website—not the restaurant's real website—as the restaurant's "official" website. The purpose of this scheme is to direct online and mobile orders through the BeyondMenu service, thereby generating additional fees or commissions for BeyondMenu. Indeed, several restaurants have complained that BeyondMenu creates these auto-generated websites without the restaurant's authorization, and that the websites are of poor quality, display incorrect information, and divert consumers from the restaurant's real website.

18. Google is informed and believes, and based thereon alleges, that Defendant's sales

agents make unauthorized and misleading use of the GOOGLE mark in their communications with restaurants in order to cause confusion regarding Defendant's true identity and its relationship with Google.  Restaurant owners or employees disclose information to Defendant because they are led to mistakenly believe that they are communicating with Google, or with an entity that represents or is affiliated or associated with Google, the GMB service, or other Google services.  Specifically, some restaurant owners are led to believe that Defendant is Google and is contacting them to verify information for the restaurant's business listings on Google's platforms.  In other instances, Defendant may disclose that it is a third-party but, through false and misleading representations, causes restaurant owners to believe that Defendant is affiliated or associated with Google or its services, or is endorsed or sponsored by Google.  In fact, Defendant is not affiliated or associated with Google, or endorsed or sponsored by Google in any way.

**DEFENDANT'S VIOLATION OF GOOGLE'S TERMS**

**19.**     By taking unauthorized control of business owners' Google listings, Defendant also violates Google's Terms of Service for Google My Business.  As discussed above, Defendant's scheme often involves causing Google's systems to send a PIN to a business and then convincing someone at the business to disclose the PIN, which Defendant then uses to take control of the business's GBM account and Google listings.  Alternatively, Defendant also attempts to obtain control of listings by causing Google's systems to send emails to businesses requesting a transfer of control over the business's Google listings.

**20.**     When Defendant causes Google's systems to either send a PIN or an email, it must access a series of Google web pages that require it to affirmatively click to agree to Google's Terms of Service for Google My Business.  At all relevant times, these Terms of Service have required the person or entity seeking control of a Google listing to confirm that they are in fact authorized to do so: "In addition, you confirm that you are the owner of the entity listed on the page or an authorized agent who is able to bind others on behalf of the entity."   (https://www.google.com/+/policy/pages-services.html).  This provision is mirrored in other Google web pages that specifically explain that "Only business owners or authorized representatives may verify and manage their business information on Google My Business" and further cautions would-be representatives that they may

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

"[n]ever claim a business listing without express consent from the business owner."

**21.**     Defendant violated the Terms of Service to which it expressly agreed by seeking and obtaining control of Google listings for businesses when it was not "the owner of the entity listed on the page" and was not the "authorized agent … on behalf of the entity." (https://www.google.com/+/policy/pages-services.html).

**22.**     Google has received numerous complaints regarding Defendant's practices. Complaints about Defendant are also evident in Google's product forums and on websites like sitejabber.com and the Better Business Bureau's online tracking of consumer complaints.

**23.**     Google is informed and believes, and based thereon alleges, that when a restaurant requests to retake control of its GMB account and Google listings from Defendant, Defendant often does not comply and instead directs the restaurant to contact Google or otherwise evades or ignores the request.

**24.**     In these instances, Google must then expend substantial time and resources in responding to complaints from restaurants attempting to regain control of their GMB accounts and Google listings and conducting investigations to determine the identity of the correct persons who should have control over a particular account.

**25.**     Google is informed and believes, and based thereon alleges, that some restaurant owners targeted by Defendant do not understand how their listings have come under Defendant's control.  As a result, they blame Google for Defendant's conduct, causing harm to Google, its business, and the GOOGLE mark.

## FIRST CAUSE OF ACTION

### FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114(1)

**26.**     Google realleges and incorporates herein by this reference paragraphs 1 through 24 of this Complaint as if fully set forth here.

**27.**     Google owns the inherently distinctive, strong, valid, and registered GOOGLE trademark.

**28.**     Without Google's consent, Defendant has used the GOOGLE mark in commerce to advertise and offer Defendant's services.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7.

COMPLAINT

29.     Defendant's actions as described herein have caused and are likely to cause confusion, mistake, and deception as to the affiliation, connection, or association of Defendant with Google, as to the true source of Defendant's services, and as to the sponsorship or approval of Defendant or Defendant's services by Google.

30.     Defendant is not affiliated or associated with Google or its services, and Google does not approve or sponsor Defendant or Defendant's services.

31.     Defendant's actions are willful and reflect an intent to confuse consumers and profit from the goodwill and consumer recognition associated with Google and the GOOGLE mark.

32.     Defendant intentionally used the GOOGLE mark in commerce in connection with the sale and offering for sale of Defendant's services, knowing that Google was not the source of such services and that such use was likely to cause confusion, or to cause mistake, or to deceive.

33.     The actions of Defendant described above constitute trademark infringement in violation of 15 U.S.C. § 1114(1).

34.     Google has been, and will continue to be, damaged and irreparably harmed by the actions of Defendant, which will continue unless Defendant is enjoined by this Court.  Google has no adequate remedy at law in that the amount of harm to Google's business and reputation and the diminution of the goodwill of the GOOGLE mark are difficult to ascertain with specificity.  Google is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

35.     Google is thus entitled to damages in an amount to be determined at trial and to any profits made by Defendant in connection with its infringing activities.

36.     Defendant's infringement of the registered GOOGLE mark is deliberate, willful, fraudulent, and without extenuating circumstances, and constitutes a knowing use of Google's trademark.  Defendant's infringement is thus an "exceptional case" within the meaning of section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).  Google is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, as well as prejudgment interest.

**SECOND CAUSE OF ACTION**

**FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)**

**37.** Google realleges and incorporates herein by this reference paragraphs 1 through 35 of this Complaint as if fully set forth here.

**38.** Google owns the inherently distinctive, strong, valid, and registered GOOGLE trademark, as well as common law rights in the GOOGLE mark.

**39.** Without Google's consent, Defendant has marketed and sold in commerce services under the GOOGLE mark.

**40.** Defendant's actions as described herein have caused and are likely to cause confusion, mistake, and deception among ordinary consumers as to the affiliation, connection, or association of Defendant with Google, as to the true source of Defendant's services, and as to the sponsorship or approval of Defendant or Defendant's services by Google.

**41.** Defendant's actions constitute unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a)(1).

**42.** Google has been, and will continue to be, damaged and irreparably harmed by the actions of Defendant, which will continue unless Defendant is enjoined by this Court. Google has no adequate remedy at law in that the amount of harm to Google's business and reputation and the diminution of the goodwill of Google's trademarks are difficult to ascertain with specificity. Google is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

**43.** Defendant's unfair competition and false designation of origin are deliberate, willful, fraudulent, and without extenuating circumstances. Defendant's conduct is thus an "exceptional case" within the meaning of section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). Google is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, as well as prejudgment interest.

**THIRD CAUSE OF ACTION**

**BREACH OF CONTRACT**

**44.** Google realleges and incorporates herein by this reference paragraphs 1 through 43 of

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9.

COMPLAINT

1    this Complaint as if fully set forth here.

2        **45.**    Defendant entered into a binding and enforceable contract with Google by clicking to

3    agree to Google's Terms of Service for Google My Business, as set forth above.

4        **46.**    Google has fully performed its obligations under these Terms of Service.

5        **47.**    Defendant breached its contractual obligations under the Google My Business Terms

6    of Service in a number of ways, including by seeking and obtaining control of Google listings for

7    businesses when Defendant was not "the owner of the entity listed on the page" and was not the

8    "authorized agent … on behalf of the entity." (https://www.google.com/+/policy/pages-services.html).

9        **48.**    Defendant's actions in violation of the Google My Business Terms of Service have

10   damaged Google as set forth above, including forcing Google to incur expenses to investigate and

11   address Defendant's unauthorized hijacking of business's Google listings.

12                                    **PRAYER FOR RELIEF**

13       WHEREFORE, Google respectfully requests the following relief:

14       **A.**    That Google be granted preliminary and permanent injunctive relief under 15 U.S.C.

15              § 1051 *et seq.*, specifically, that Defendant and all of its officers, agents, servants,

16              representatives, employees, attorneys, parent and subsidiary corporations, assigns and

17              successors in interest, and all other persons acting in concert or participation with them,

18              be preliminarily and permanently enjoined from: (i) using the GOOGLE trademark or

19              any variations thereof in connection with the marketing, promotion, advertising, sale,

20              or distribution of any of Defendant's products or services (except as reasonably

21              necessary to identify Google's own products and services); (ii) using any false

22              designation of origin or any false description that can, or is likely to, mislead the public,

23              or individual members thereof, to believe that any product or service distributed, sold,

24              offered for sale, or advertised by Defendant is in any manner associated with or

25              approved or sponsored by Google; (iii) representing in any manner that Defendant or

26              its sales agents are endorsed or sponsored by Google, or represent or work on behalf of

27              Google, or are affiliated or associated with Google; and (iv) any other infringing or

28              misleading conduct discovered during the course of this action;

**B.** That Defendant files, within ten (10) days from entry of an injunction, a declaration with this Court signed under penalty of perjury certifying the manner in which Defendant has complied with the terms of the injunction;

**C.** That Defendant is adjudged to have violated 15 U.S.C. § 1114(1) by infringing the GOOGLE mark;

**D.** That Defendant is adjudged to have violated 15 U.S.C. § 1125(a) for unfairly competing against Google and by using a false designation of origin for Defendant's services;

**E.** That Defendant is adjudged to have breached Google's Terms of Service;

**F.** That Google be awarded damages in an amount sufficient to compensate it for damage caused by Defendant's acts;

**G.** That this Court order an accounting of Defendant's profits pursuant to Defendant's unlawful activities and award all of said profits to Google;

**H.** That Google be awarded three times Defendant's profits and three times Google's damages suffered as a result of Defendant's willful, intentional, and deliberate acts in violation of the Lanham Act;

**I.** That Google be awarded its attorneys' fees and costs in this action under 15 U.S.C. § 1117 as a result of Defendant's Lanham Act violations and for violation of Google's Terms of Service;

**J.** That Google be granted prejudgment and post judgment interest; and

**K.** That Google be granted such further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Google hereby respectfully demands a trial by jury of all issues triable of right by a jury.

//

//

//

//

1

Dated: May 22, 2018

2

**COOLEY LLP**

3

WHITTY SOMVICHIAN (194463)
BRENDAN J. HUGHES (*pro hac vice* to be filed)

4

REBECCA GIVNER-FORBES (*pro hac vice* to be filed

5

/s/ Whitty Somvichian

6

Whitty Somvichian
Attorneys for Plaintiff Google LLC

7

8

9

177071690

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28